Baldwin, J.
Our law of distributions gives to a widow one third at least of her husband’s personal estate of which he dies intestate, (after payment of debts and charges of administration,) to be enjoyed, in regard to the slaves, during her life, and as to the rest, in absolute property; and where he leaves a will, authorizes her to reject its provisions in relation to herself, and to take the distributive share in that event provided. 1 Rev. Code, ch. 104, § 26, 29, p. 381, 382. These enactments impliedly recognize the power of the husband, which he had, according to the modern common law, to alienate by sale or gift in his lifetime, the whole or any part of his personal estate, and thereby exclude his wife from any interest therein. But they depart from the English law in respect to the husband’s disposition by will of his goods and chattels, which by that law is effectual against his wife, who can claim no part of what is so bequeathed; and the effect of them is to secure to the wife her distributive share of whatever personal property belongs to the husband at the time of his death, whether he dies testate or intestate.
This right, by our law, on the part of the wife, I think it clear the husband cannot defeat by any contrivance for that purpose: He cannot, by any device, die testate or intestate in regard to his personal estate, in such wise as to bar her distributive share. Whatever may be the form of the transaction, if the substance of it be a testamentary disposition by the husband of his property, it cannot be effectual in relation to the wife. Lf this were otherwise, the statute might be rendered a dead letter at the volition of the husband.
*604 It follows, that where a husband by a voluntary deed of gift of personals, in whatever form made, retains to himself the possession and enjoyment of the property during his life, and making the gift effectual only from the time death, reserves on his own part an absolute and complete power of revoking the same; such an instrument, so far as regards the distributive share of the wife, is in its nature testamentary only, and cannot affect the rights conferred upon her by law in contemplation of his dying either testate or intestate. In such a case, the dominion of the husband over the subject continues unlimited, and the question is not varied by the circumstance that the gift takes effect by his failing to exercise the power of revocation, for that is incidental to every testamentary disposition of property.
On the other hand, where the deed of gift of the husband is in its essence absolute and irrevocable, so as to separate a portion of his personal property, or its value, from the rest of his estate, and divest him of his dominion over it, the circumstance that the gift is to become effectual during his life, or after his death, is immaterial; for, as the law confers upon him the power to alienate his whole ownership of the property, so he is not restrained from giving away a part of that ownership, whether the gift is to take effect before his death, or from that period. Two circumstances must concur to render the gift testamentary in its nature ; one is, that it is not to be substantially effective until his death ; and the other is, that the husband does not divest himself of the capacity to recall it, and so resume to himself, or his estate, the ownership granted.
I deem it unnecessary to notice particularly the English authorities which have been cited in the argument, as to what instruments are to be regarded as testamentary or otherwise. They do not bear, as I conceive, materially upon the distributive rights of the wife under our law, which has an element unknown to the com *605 inon or to the ecclesiastical law of England; the disability of the husband to defeat his wife’s distributive interest in his personal estate by testamentary provisions. There he may give away the whole of it from his wife by his last will and testament. And as to the decisions founded upon local customs there, they depend so much upon the peculiar principles of those customs, that they can throw but little light upon the construction of our statute, the spirit of which, it seems to me, is perfectly obvious, in discriminating between the alienations of the husband in his lifetime, and his revocable gifts of a testamentary nature.
Nor do I deem it at all material by what motive the husband was actuated in making the disposition of his property. Inasmuch as the law recognizes his perfect right to give away from his wife in his lifetime his whole personal estate, it is nowise relative to enquire by what sentiment, or prejudice, or passion, he was impelled to exercise that right. On the other hand, a design, on his part, to prevent the lawful interest of the wife from accruing, cannot be accomplished by any ways or means of dying testate in relation to the subject.
I consider the case before us, as ruled by the authority of Lightfoot's ex’ors &c. v. Colgin & wife, 5 Munf. 42, 555; the principle of which, I understand to be, that a wife has not such an interest in that portion of the personal estate of her husband, to which she may be entitled in the event of his dying intestate, or leaving a will which she may renounce, as that an absolute and irrevocable, though merely voluntary deed thereof, executed by him to his children by a former marriage, can be considered a fraud on her rights, or be set aside at her instance; and though the instrument be a deed of trust, by which he reserves to himself the possession and control of the property during his life. That case is, in its circumstances, very much like this, and the particulars in which they differ are unimportant. In *606 both, the conveyances were to a trustee, and the gift was to take effect at the death of the husband, who reserved the possession, control and enjoyment of the property during his life ; in both, the deeds were irrevocable ; in both, the trustee was authorized to sell the property or a part of it, and was to account for the proceeds ; and in both, the design was to cut off the wife from her distributive share.
It is true, that by the deed in the present case, though the interests of the donees were joint and equal, power was reserved to the grantor to reapportion the same, and exclude one or more of them at his discretion, from participation with the rest, and even to confer the whole upon one. But still there was no authority to revoke the gift; it was, notwithstanding, effectual against the donor; he thereby divested himself, prospectively, of so much of his estate, in kind or value, without the power of recalling it.
It is also true, that in the present case (as in Lightfoot v. Colgin) the donor might have defeated the gift by wasting the property, and wasting his estate, or that the claims of creditors might have disappointed the expectations of the donees; but the distributive interest of the wife would have been subject to the same casualties if the deed had never been made; and that deed, however fraudulent in law or fact, as against creditors and purchasers, is not the less valid between parties and privies; and the wife, as regards the subject, was neither a creditor nor a purchaser.
It is moreover true, that the practical result of allowing such donations by the husband, to the prejudice of the wife, is to enable him to accomplish a design, formed in contemplation of approaching death, to cut off his wife from the distributive share of his estate, to which she might be entitled upon that event. But this is equally true of every voluntary gift by the husband in his lifetime; and no distinction can be founded upon *607 the longer or shorter time intervening between the donor’s gift and his death. He may live for but a day, or for many years; and in either case, where the gift is irrevocable, he has parted from so much of his estate, and no change of circumstances or inclination can enable him to recall it.
The propriety of sustaining the deed in this case results, it seems to me, from a substantial distinction which the law has made between gifts and testaments; and we cannot depart from the plain and certain guide furnished by the authority and the principle of Lightfoot v. Colgin, without introducing into our jurisprudence various perplexing difficulties, and giving rise to numerous controversies.
The objections which have been urged against the validity of the gift in question, founded upon a supposed disregard of the solemnities required by law in relation to the attestation and authentication of the instrument, are unwarranted, it seems to me, by the true construction of our statute law upon the subject.
Our revised act concerning slaves, 1 Rev. Code, ch. 111, § 51, p. 432, provides that, “No gift or gifts of any slave or slaves shall be good or sufficient to pass any estate in such slave or slaves, to any person or persons whatsoever, unless the same be made by will duly proved and recorded, or by deed in writing, to be proved by two witnesses at the least, or acknowledged by the donor, and recorded according to law:” but that, “this section shall be construed to extend only to gifts of slaves, whereof the donors have, notwithstanding such gifts, remained in the possession, and not to gifts of such slaves as have at any time come into the actual possession of, and have remained with the donee, or some person claiming under such donee.”
If this statutory provision stood alone in our Code, the effect of it would, perhaps, be to avoid all gifts of slaves, of which the donor remained in possession, *608 whether verbal or written, by absolute deed, or by limitations in trust, and not only as against creditors and purchasers, but as between the parties themselves and their privies.
But by our revised act concerning conveyances, 1 Rev. Code, ch. 99, § 4, p. 362, “ all deeds of trust and mortgages whatsoever, which shall be hereafter made and executed, shall be void as to all creditors and subsequent purchasers for valuable consideration without notice, unless they shall be acknowledged or proved and lodged with the clerk to be recorded according to the directions of this act; but the same, as between the parties and their heirs, and as to all subsequent purchasers with notice thereof, or without valuable consideration, shall be valid and binding.”
These two revised statutes, in pari materia, and passed at the same session, must be construed together, and the effect is a modification of the one first by that last quoted. The former prevails as to all gifts of slaves of which the donor remains in possession, whether by parol or by absolute deed, and so as to avoid them, not only against creditors and purchasers, but as between the parties themselves, except those by deed proved and recorded according to the directions of that act. The latter governs all deeds of trust of slaves, not only such as are incumbrances for value, but such as are voluntary limitations in trust; and avoids them as against creditors and purchasers without notice, unless authenticated and registered as therein directed; but gives them full effect as between the parties themselves and their representatives. The apparent conflict between these two acts doubtless occurred from the introduction of them into the revisals, from the prior statutes, without attention to the propriety of making alterations in the language of that concerning slaves, so as to make it harmonize with that concerning conveyances ; but leaving them to be harmonized by juxtapo *609 sitien and construction. This had already been done in regard to the revised act of 1792, concerning conveyances, and against frauds and perjuries, by this Court in Moore’s ex’or v. The Auditor, 3 Hen. & Munf. 234.
I think, therefore, that the deed of trust in question in this case would have been good as between the parties, if it had not been recorded at all; and of course its validity cannot be affected by its recordation after the death of the donor. It was certainly duly made and perfected by delivery.
My opinion is, that the decree of the Circuit court ought to be reversed, and the bill of the appellee dismissed.